I think we're ready to go. Judge Gould, are you all set? Yes, I'm ready. Thank you. Okay, we're ready to hear your argument. All right. Thank you, Your Honors, and hopefully everyone can hear me all right. Good afternoon, Your Honors. May it please the Court. Laura Schaffer from the Office of the Federal Public Defender on behalf of Appellant Chauncey Jamal Veasley. I'd like to reserve five minutes of my time and I will do my best to keep an eye on the clock. Okay. Your Honors, Batson instructs that the Equal Protection Clause forbids, and now I'm quoting directly from Batson, forbids the states to strike black veneer men on the assumption that they will be biased in a particular case simply because the defendant, too, is black. The core guarantee of equal protection, ensuring citizens that their state will not discriminate on account of race, would be meaningless were we to approve the exclusion of jurors on the basis of such assumptions which arise solely from the defendant's race. And this is the end of the Batson quote. In this case, the prosecutor testified that she struck juror Mary J. because the case at bar involved, and now I'm quoting from the evidentiary hearing transcript, three young men using a firearm in the murder that was the subject of the case, and they were three relatively young African-American males. Her son was obviously a young or African-American male who was arrested for carrying a gun or having a gun in his car. The prosecutor continued. So I wondered whether she might feel sympathetic to them, meaning to the defendants. Your question is exactly the kind of race-based assumption that Batson forbids. Can I stop and break this down? I guess one part is annoyingly distracting to me, which we don't actually know if her son was black or not, right? That's correct, Your Honor. Okay. So setting that aside for a minute, of course, the difficulty here is there's a race-based reason. We don't typically hear this. And a non-race-based reason in this case. And again, to just back it up, if I can, a little bit, we have a declaration from her first, from the prosecutor. I'll ask you both this question, and I'd like to hear your responses. Well, I should say all three. I'd like to hear your responses, but if we were just looking at the declaration, would there be a valid Batson claim here? There still would be a valid Batson claim, Your Honor, because if we were to look also to the comparative juror analysis as to these strikes, and particularly as to Juror MJ, we would be able to make out the Batson violation. But the Batson violation... On what grounds, specifically, are you referring to? Sure. So there are several indications that we can look to, to look for pretext in comparing Juror Mary J. to other similarly situated jurors. So, for example, one claim that the prosecutor made was that she was concerned about the statement Mary J. offered in regards to the death penalty. Whether Mary J. was an unabashedly pro-death penalty juror, so it was surprising even to the defense that she was struck. I think the defense referred to her as a people's juror, not one for the defense. And when she responded as to her feelings on the death penalty in the questionnaire, she said, I'm with the death penalty. If the law says death, I'm with the death penalty. And the prosecutor, somewhat surprisingly then, stated that she felt that this indicated that Juror Mary J. would have a problem with the death penalty, with the death penalty weighing process. And frankly, Your Honors, it's hard to believe that a prosecutor would be using a peremptory to strike a juror solely because the prosecutor found the juror to be too death penalty friendly. And there were other jurors who also... Well, that's not... Just to give her credit where it's due, what she described there is more nuanced, right? She was concerned that what she said, anyway, is that she was concerned that this juror was going to be looking for sort of an on-off switch and not really understand that at the penalty phase there would be a weighing, right, of aggravating and mitigating. That's correct, Your Honor. And I think we can then look to other jurors who expressed similar types of... Types of thought about how the death penalty decision would be made. So, for example, Juror Benton M., who was not challenged by the prosecutor, said, it is a consequence of an illegal act and its application is specified by law, which to me is very similar to suggest that the law will tell you whether or not the death penalty should result in this case. So what we would argue, Your Honor, is that this was a very thin ground on which to base the rejection of Juror MJ. And we also have to look at the fact that with Juror Mary J., the prosecutor made a notation on her questionnaire as to one of the groups she was a part of. And one of the groups that Juror J. said she was a part of was the NAACP. And the questionnaire... That argued in the district court? That seems to be an argument that's new now. I believe, Your Honor, that was argued in the district court because it was a subject of discussion at the evidentiary hearing. If you come back and can show us where that was argued in the district court, that would be helpful. But your answer to the question really, when I said this is where we started down this path, if we just had the declaration and not the testimony, I think your answer is yes, you'd still have a Batson challenge. And in response to Judge Desai's question, I think your answer is that a compared juror analysis would get you there, even without the testimony. Yes, that's correct, Your Honor. And that specific issue with respect to the NAACP affiliation that's on the questionnaire, that's not part of your argument with respect to the comparative juror analysis, correct? It is in the sense that all of the jurors were asked to list their affiliations on the questionnaire. And from our review of the questionnaires that were then produced with the prosecutor's notes, there were no other affiliations that were noted on the front page of the questionnaire. So I do also think comparative juror analysis comes in here, because there was clearly something about that affiliation with Juror MJ that gave the prosecutor pause. There was a reason she noted that. So this kind of brings us back to, she noted other reasons. She, I think, mistakenly understood that Juror J was a social worker, for example. She noted some other reasons that we see prosecutors rely upon. I think you're nodding your head. I think you agree with that. And the district court found that. The district court found that this reason was not the substantial motivating factor, right? The race-based reason was not the substantial motivating factor. Except he didn't really find that. What he found was that the substantial motivating factor was that she was a mom, basically. Correct. She was the mother and said that the mother-son relationship was stronger than the other relationships when it got to the comparative juror analysis stage. One question I have, and I'll have it again, I'll have it for all of you, is that the district court mentioned, he makes the ultimate finding that race was not a substantial motivating factor. And he acknowledges this part of the testimony that you mentioned, but not all of it. But not all of it. So he acknowledged the part that really essentially, I have it here, but it's kind of a long quote as you just laid out for us. He acknowledged the part where she testified to being concerned that juror MJ might be overly sympathetic because she had a son who was charged with gun-related offense also. That's my paraphrase. But I don't think there's a place where the district court acknowledged the other part of the sentence, of the testimony, which starts with our case was three young men using firearms in the murder. There were three relatively young African-American men. Jackson Sung was obviously African-American and so forth. So it seems to me that that can be taken two ways. Do you read it differently? What's your response to that? Well, I would agree, Your Honor, that it is a telling omission in the way the quote is presented in the district court opinion. And I think it lends support for a finding of clear error in this case because it's not engaging with the explicitly race-based reason. So let me ask you this. Let's just say we agree with you that the district court clearly erred by failing to acknowledge that the prosecutor gave an explicitly race-based explanation for the strike of Mary J. Should we remand or should we conduct the Batson analysis ourselves? Your Honor, I believe the appropriate course at this stage would be to conduct the Batson analysis yourselves. And I believe with the evidence that has now been produced at the district court level because they went forward with a reconstruction hearing and because we have the declaration from the prosecutor on review of the district court's decision, I believe this court has sufficient evidence to find that a Batson violation did result from the strike of juror MJ. Do you have any authority for the notion that we wouldn't send this back to the district court? He's overlooked this arguably in this particular hypothetical. In other words, if we decide that this hasn't been grappled with, your response to Judge Desai's question is that we should do this here. Yes, Your Honor, because I believe the record... My question is, do you have authority for that where we've done that? And let me just ask this question on top of Judge Kristen's question. I think what you said is that we can do this, but it would not be improper to send this back for remand. So maybe as you're answering Judge Kristen's question, you can cite to the best authority that you have that we ought to decide it here versus perhaps authority that indicates it's regularly more appropriate to remand to the district court. Yes, Your Honors, and I might have to come back on rebuttal with case sites that specifically look at what the principles are that guide sending it back, again, to the district court to reconsider. But my answer, Your Honor, based on the cases that we've reviewed based on Shirley v. Yates, based on Paulino, too, is that when you have the reconstruction hearing and you have the evidence that has been created and that evidentiary record is available, it's not unusual for this court then to decide whether or not clear error was committed and then to look at the body of evidence that has been already created in the court below to determine whether the case can be met. And we would argue, Your Honors, that it's not, at this stage, it is not difficult to find that a batson violation has occurred. As we have briefed and as we argued at the district court, there were already concerns with the idea that 27 years after the trial, we would be able to create an opportunity for the prosecutor to come and give the reasons that would supply the step two analysis. And so now that we've gone down that road, we've filled out the evidence, we've allowed the prosecutor, as you mentioned, to submit the declaration, to give her testimony. There is significant evidence that now exists before this court that would allow it to make the ultimate determination that on the basis of this record, race was a substantial motivating factor. And whether it was an oversight on the part of the district court, the district court had this evidence before it. So this is not something that wasn't in the record before the district court. But he hasn't addressed it. That's true, Your Honor, but we would say that's indicative of clear error rather than somehow... Well, to be fair, there is a declaration that basically says the same thing as Prosecutor Decker said in the transcript of the evidentiary hearing, but then omits the references to the race of the defendants. And so I think that you could also read that to mean that he, looking at both, he's taking the sort of common denominator as between the two explanations and sort of addressing, you know, that that's sort of how he read her explanation. I understand Your Honor's point, but I would disagree. And the reason I would disagree is because the evidentiary hearing is supposed to ferret out the actual reasons for the strike. And this is why the case law is so insistent on the fact that the people who are present for the evidentiary hearing, they're able to do the best assessment of credibility. They're able to, they're the ones who were there at the time, they're able to see what actually happened. That's why we would send it back, though. You're telling us, I agree, and yet you're wanting us to make that finding here. He's made, it's a conundrum because the district court has made the ultimate conclusion here, right, that we need, that Batson calls for, that race was not a substantial motivating factor. But we can't tell from this record unless, I haven't heard from the state yet, but I don't think we can tell what the district court thought about this, this discrepancy, the delta between the testimony in the courtroom and the declaration, which Judge Josiah and I both have asked you about. I understood, Your Honor. I would say that it's telling that there is this discrepancy between the declaration and the evidentiary hearing testimony. We look at circumstantial evidence to be sure, right? And I want to hear what the state has to say about this. I think from reconstructing this, that there's the declaration and I think that the part of the testimony that you and I have both quoted, our case was three young, relatively young African-American men. That sentence was just about the first thing the prosecutor said. Yes, Your Honors. And to our mind, that suggests that that was something that truly stuck out in her mind. This is sort of the credibility that these cases talk about in thinking, what is it that is really motivating the prosecutor's strike? What is the actual reason? In a declaration, the declaration is prepared on the basis of conversations with the Attorney General once the evidentiary hearing has been granted, it's been reviewed, it's been submitted, that is not a mistake that is going to be made in a written declaration, but that was a mistake that was made at the evidentiary hearing. Was this argument that you're making right now about this discrepancy between the declaration and the testimony made before the district court? It was not presented before the district court as strongly as it should have been, Your Honor, no. The argument that... I don't think it was, and if you've got, and I'm not trying to give you a hard time, but if when you come back, if you can show me that it was argued to the district court, that would be helpful. You know, we're kind of pulling this together and trying to piece it together, but I don't know that it was argued. We are so deferential to the district court who did have an evidentiary hearing, found the prosecutor credible. I can't see anywhere where this concerning testimony has been grappled with. You're arguing that it was clear error, so we don't typically... Go ahead. I'm sorry. I just wanted to say that I believe under Paulino 2, this is a Step 2 consideration, and a Step 2 consideration, I believe, is actually reviewed under De Novo Review. I think it's a Step 3 consideration. Why isn't it a Step 3 consideration? Because the Step 2 consideration asks whether or not a race-neutral reason has been advanced. Right, so it's a burden of production. So here, I think you argued already that had been explanations provided, some of which are race-neutral. So once that happens, why don't we move to Step 3? I'll clarify what I was trying to say, Your Honors. I believe we do move to Step 3, but Step 3 remains under the clear error analysis. Step 2 allows for De Novo Review. Obviously, the steps sort of complicated, but I don't think there's any case law that suggests reading out the race-based reason given in the Step 2 analysis. Yes, there was one or two other reasons given, but there's nothing that says that just don't consider, because frankly, it doesn't happen very often. No, but at Step 3, the Supreme Court has addressed this, and we've addressed it. At Step 3, we're still looking for what's the... Was the race-based reason a substantial motivating factor? That's correct, Your Honor, and what we would say is that this court can look to the record that was created, De Novo, for... Yes, I think maybe what you're arguing is in response to sort of an earlier discussion we were having as to whether it was raised. My view is that by raising the Batson claim, the issue is properly in the record. It's before us. We can look at it. I don't think there's a waiver, and if you didn't make the argument as well as it should, not you, but if, you know, at the evidentiary hearing of these arguments, all the different theories of the claim had not been presented as well as they should have been, I don't think that's a waiver, but it, I think, goes to the question that I asked earlier, which is, you know, what is the best authority that you have for why we should decide this ourselves as opposed to having the district court take a pass at it with the... with sort of the full-throated arguments that you're making here before us now? Thank you, Your Honor. Yes, I understand the concern, and I will have to come back with authority for the proposition that the district court should again have the opportunity to pass on this. I would say that the amount of time that has already passed to get to the Batson Step 2 analysis in this case has allowed for now sufficient evidentiary development for this court to look at the record and decide on the basis of the record that has been developed. I think there is a problem of timing here with how long it has taken to actually get these reasons on the record and to send it back to the district court once again, where it is likely that if fully confronted with there was a race-based reason given at Step 2 at the evidentiary hearing, which is strongly indicative of the fact that race was, in fact, a substantial motivating factor, because why is it popping into her mind at this point differing from the declaration that was given, that at this point I think this court can make the decision here. I don't think more information is needed from the district court for this court to make the legal judgment that, in fact, all of the evidence exists on the basis of this record to find that a Batson violation had occurred with respect to... So you are asking us to make a finding effect, but let me just pause here because you wanted to reserve some time and we haven't let Judge Gould get in a word at all at this point. So, Judge Gould, I know it's hard to break in sometimes when you're on video. Do you have questions at this point that you would like to ask? Well, I have a general question, but I think it, I'm not sure how pertinent it is. I was trying to understand exactly why so much time has passed between the end of the trial and us getting this Batson issue. At this stage, maybe, I don't know, how many years has it already been? Ten years? At this, oh, my apologies, Your Honor. How about at this point? At this stage, I believe we are 34 years after the time of trial. The Batson reconstruction hearing took place in 2018. That was 27 years after... Okay, so for 34 years since trial. Now, if we don't decide the issue now, then we send it back for the district court to elaborate on step three analysis. Then there'd be a judgment of the district court at some point, and if that were 20 years after the second district court opinion, would it be, we don't know, right? But if it's already been, how many years? Thirty. Thirty-four. Thirty-seven. About 14 since it, I had to go through the state court first, right? Sorry, yes, yes. I guess I understood. Fourteen years since the 2254s were filed. Yeah. I'm getting concerned if we don't decide the issue and send it back, if it's been so long since the trial that all the key witnesses may have passed away or documents may have been destroyed. It may practically become impossible to have another trial, and I'm concerned about what impact that would have the next time the court reviews the case. Thank you, Your Honor. Wouldn't that issue, to me, that issue would argue for our panel deciding the issue once and for all unless the Supreme Court grants a review after that. I would agree with Your Honor's position. I think the information, as I said, I believe is in the record for this court to be able to make a ruling that it is confident in, and this, I think, gets to the tension in the case law in what is a determination of fact versus what is a legal determination when we're talking about the review of a Batson error. And I understand, Your Honor, to be saying that there was an issue of fact that was perhaps not flagged sufficiently. But because, counsel, you labeled this as clear error. You labeled this as clear error. Yes, Your Honor. I believe that the step three, but not to say that I necessarily disagree with the bulk of the case laws to whether this is a factual or a legal determination, but I believe that the facts that we're concerned about when we send things back to the district court on remand are here. And so what the real question is, is taking into account these facts, how did the legal analysis come out, and did the legal analysis come out directly? And that's why I believe this court is in a position now to make that determination. But you would have us rule, just to be clear on this, that even though the district court made the finding that race was not a substantial motivating factor and found that the prosecutor was credible, that because this other race-based reason had been articulated and not addressed by the district court and not argued to the district court by the defense, I don't believe, that the district court clearly erred by finding that, and that we would say this was a substantial motivating factor. Yes, Your Honor. I would, because I think the clear error analysis looks as to whether the record supports the district court's finding. I know, but that's the conclusion, so just walk me through it if you would. And that's because you think that, I'm just trying to glean this from what you're telling me. I think what you're saying is that we would look to the circumstantial evidence that there's this delta between the declaration and the testimony, right? Yes, Your Honor. I'm not sure why the testimony during the evidentiary hearing isn't direct evidence of the prosecutor's stated motivation. I didn't say it wasn't. I'm just trying to figure out what you're telling me. What would be the basis for us making this finding here? The basis, Your Honor, is that the record, the evidentiary hearing transcript, which was reviewed by the district court and presided over by the district court, is what contained this admission on the part of the prosecutor as to the actual reason for her strike. So let me just tell you that I agree with you. The expressed statement during the hearing is exactly the type of race-based sympathy reasoning that is prohibited under Batson. But I think the question that our other questions about whether we decided or sent it back get to is that that is true, but the district court didn't grapple with that, and we don't know why. And because it wasn't argued, it is hard. So there may be a clear error in the sense that there's this explicit race-based statement that is some of the worst that you can imagine if you're thinking about a Batson claim, but it hasn't been considered or addressed in any way, even though it is, in fact, and I agree with you, on the record. Yes, Your Honors, and I do understand, and I think it brings us back to Judge Gould's point, which is that there can also be a consideration, I think, of what it would mean to remand to the district court simply to draw attention to that explicit statement and then have the district court draw the conclusion that it seems one should draw from what that statement meant as to the prosecutor's reasons for striking MJ. The time that that would take, the appellate process that would take, there is a quantum of prejudice here that's sort of increasing with the amount of time that this claim has not been resolved. Forgive me for interrupting, but you're down to under three minutes. Do you want to save what you've got left? Yes, I'll save my remaining time. Thank you for your response. Thank you, Your Honors. Good afternoon, Your Honors. May it please the court. Deputy Attorney General Stephanie Yee, on behalf of the state. This court should affirm the denial of the Batson claim. With regard to Juror MJ, and in response to Judge Christen's question, there is no Batson violation, whether we rely on the declaration or even including the testimony  that was given at the evidentiary hearing by the prosecutor. The prosecutor articulated her concern about MJ, and it was more about the similar situation that the defendants were in and how she feared MJ. But when she was describing that, as I think you're about to characterize her testimony, in the declaration, when carefully drafted, she excluded the references to the race of the defendants and also of Juror Mary J. and Mary J.'s son. But when asked this question and answering it at the evidentiary hearing, very explicitly referenced race. So I'm not sure I understand why she didn't just frame her response in the same way that she did in the declaration, if that was truly her intent. Yes, Your Honor. There is that difference between the declaration and the evidentiary hearing. However, in looking at her whole explanation, there is additional explanation here that was not quoted that she gave at the evidentiary hearing. And the prosecutor explained, I believe MJ was a little older, maybe in her 50s, whether she might feel sympathetic to the defendants, thinking that they were kind of in the same situation as her son had been. And what the prosecutor was... Counsel, I think that's right. And you're telling us what you think the prosecutor argued and what was or was not a substantial motivating factor. So that brings me back to where I started, which is there's one reason in the declaration, and there's another reason which is, I think, can be read two different ways. But it is certainly a reference to race, very directly. And so I don't know that Judge Desai and I are coming at you in quite the same way. But if I read all in that there is a delta between the declaration and the testimony, and I'm concerned that the first thing she said in the testimony can be read to be race-based, it wouldn't have to be. The conundrum I have is that the judge made the bottom line ruling that this was not motivated in substantial part by race without grappling with the part of her testimony that is race-based. So that's where I'm sitting on this. And I've stared at this wall. I've squinted at it really hard, as I'm sure you have. So if I think it can be read two ways, and the district court didn't address the race-based rationale, what's your advice about what happens to this next? Yes. So I have two responses. The first is that we cannot assume from the district court's opinion that it didn't grapple with this part of the prosecutor's response. The prosecutor, excuse me, the district court presided over the evidentiary hearing. It heard all the testimony. It heard the prosecutor's response when she did make that acknowledgement. Was your argument that we should, in fact, decide this ourselves as opposed to remanding it if we find that there's clear error in the ultimate determination that she wasn't motivated by race? No, Your Honor. And that's for... Sounds very much like you are saying that by saying that we must assume that the district court considered all of these things. And simply because its ultimate ruling didn't expressly address it, it doesn't mean that it wasn't considered. No, Your Honor. What I'm saying is that the district court did hear all of these things, considered them, and then made the ultimate finding that race was not a substantial motivating factor. He might have, but we can't tell that. And I don't see where the defense made this argument. So if he had done, if the district court did that, he did it on his own without receiving the argument in his defense. I don't think this was presented in the district court. I think that you're right, Your Honor. It wasn't argued to the district court, but I think the fact that the district court did quote a portion of her testimony, including a portion that included the reference to race, that the district court did consider that testimony, and it did make the ultimate finding upon considering... I don't think I understand what you just said. The court did consider, did you say a portion of the testimony that addressed race? Yes. Is that what you said? Okay. Can you help me out? Where are you looking? Yeah. In the district court's opinion, when it talked about juror MJ, and this is on page 16 of the district court's opinion, it references the part where the prosecutor said, our case was three young men using a firearm in the murder. That was the subject of the case, and they were three relatively young African-American males. So the district court actually quoted... I'll give you that. Okay. I'll give you that, but not the other quote, right? The first thing she said, and I think Judge Desai and I both have pointed this out, there's a lot of time to come up with a declaration and carefully prepare it. I'm not casting any aspersions. I'm just saying that's a pre-prepared thing. And it is meaningful to me that this testimony, our case was three young men using a firearm in the murder, and they were three relatively young African-American males. Jackson's son was obviously a young African-American male. I don't know if that's right or not, but that's what she thought, who was arrested for carrying a gun or having a gun in his car. And then she goes on to say, I have concern that she's going to be overly sympathetic. That quote, I don't think gets mentioned by the district court. Is that right? That is correct, Your Honor. But I think the fact that the district court did make this reference, albeit it wasn't the complete quote, it was a very long quote by the prosecutor. But I think the fact that the district court did mention this quote, including the reference to race, shows that the district court did consider that testimony. Well, it shows that he considered some reference to race. I agree with that. It's just not the more compelling direct statement. Yes. And I think that that's a far jump from saying that to saying that the district court clearly erred. Because the district court did reference that, and the district court had all the information before it. And its findings are amply supported by the record. And I think to the earlier questions as well, that's why this court, this should be decided by the district court. And if there is a question by this court about whether the district court considered that, it should be sent back. Okay, so can we back up then? When you say that the findings are amply supported, the finding that's amply supported, I think what you mean, if I could just break this down, is the finding that race was not a substantial motivating factor is amply supported. I think that's right, because if you go back to a little higher on the decision tree, there's two reasons given. One is that she's the mother of a similarly situated young man. And the other is that she's African American, and there's concern that she would be overly sympathetic and perhaps not apply the law evenly, because there are three African American defendants. So the fact that the ultimate determination is amply supported doesn't help me very much, because I still don't know whether this other, I don't think the other evidence was, well, I can't tell if it was considered or not. Well, I think this quote shows that it was considered, Your Honor, and I think that we can reasonably assume that the district court considered that everything that was before it, including the testimony, the declaration, everything of the record that was supported, the contemporaneous handwritten notes, the district court noted in its opinion that it considered all of that and ultimately made that finding that race was not a substantial motivating factor. And it isn't... Let me ask you this, because I am troubled by the explicit reference to race. I think it's impossible to ignore those statements. And so maybe you can just take a moment to respond to your friend on the other side's argument that there was clear error at step three in ultimately determining that race wasn't a substantial motivating factor because we have to look at the other comparator juror analysis and things like the notation of the NAACP on the juror questionnaire and things like that. Yes, Your Honor. So with respect to those, I would like to point out that for comparative juror analysis, RM was never raised before. It wasn't raised in the district court and it wasn't raised until this briefing. And so I do think that that issue was because it wasn't before the district court. Have you raised an issue of forfeiture or waiver yourself? Because the government can also waive a waiver if you didn't raise it. So I'm curious to know, have you raised that issue? And if so, can you point me to where in the record that you have raised here on appeal that there is a forfeiture or waiver? I don't know that that was stated on our briefs, Your Honor. However, I think that it can be forfeited because when we're looking at district court's opinion and whether there was clear error, clear error can't be based on something that was not raised before it, that it didn't have occasion to decide because one party didn't raise it below. But the comparative juror analysis was developed at the district court. So these claims were raised. If the specific theories or arguments were not raised, then that doesn't negate the ultimate claim. And so I'm asking you, you're arguing here today for the first time, I think, forfeiture. But is there any place in your briefs that you can point to where you have raised this issue before? We have not, Your Honor. But I would disagree with that because the court does have to rely on the parties to proffer jurors for comparative analysis. The district court is not obligated to sui sponte, go through all the juror questionnaires and do its own comparative analysis. The issues must be framed by the parties. And so because RM was not raised below, the district court did not have occasion to consider it. However, even if this court were to consider RM, he is not similarly situated to MJ. Because saying that he... Yeah, I'm sorry. Maybe we're talking past each other. So I'm asking specifically about the notation on juror MJ's questionnaire with respect to the NAACP affiliation. And you're talking about different juror, I think. So the NAACP notation on the juror card, I think, wasn't argued. I don't think it was argued before the district court. And hence, your position, I think your response was that the defense waived that. And Judge Desai's question is, well, has the state waived waiver? Because we don't see it in your briefing. I think that... I don't mean to put words in your mouth. That was my question. But now you're referencing a different juror altogether. So I am confused. So I was responding. And I'm sorry if I misunderstood. I thought the court was asking about the comparative juror analysis that Beazley had raised in argument, as well as the NAACP notation. And so I was addressing the comparative juror analysis first. But with regard to the NAACP notation, again, that also wasn't raised before the district court. However, the... And did you waive waiver? That's what we're asking. I don't think that that was asserted in our briefs. But I don't think that that forfeits argument. Because again, we're looking at what was before the district court when it made its finding. And at the evidentiary hearing, the prosecutor actually was asked about the NAACP notation. And Beazley's counsel asked her, what concerned you about the NAACP? And the prosecutor said, nothing concerned me. It was just something to get to know her, along with all the other things that she noted about MJ. Like the fact that she was divorced. She had four children. The last book she read was the Bible. There were a number of things that she noted on MJ's questionnaire. Right. But how does that look when you compare it to other juror questionnaires? Did she note on other juror questionnaires membership in Rotary or Girl Scouts or what have you? Well, again, it's difficult to... I think the answer is no. But if you can show me that she did that, it would be helpful. The difficulty, Your Honor, is that Beazley didn't name any other jurors for that were similarly situated in that way. I think the argument that the defendants are making now with respect to this evidence for their Batson claim is that it goes to determining at step three that this was in fact a race-based strike. And so I think we're getting lost in this discussion because really why I asked you to address the comparator juror analysis and the NAACP notation in the first instance was to try to get your position on whether or not we can find clear error on the part of the district court's decision at step three. Okay. The bottom line is that there was not clear error because the district court had before it all of this testimony, including the fact that the prosecutor was asked about the NAACP notation and her response to it. And at the end of the day, the court considered the other reasons that the prosecutor offered for why she excused MJ, which were also borne out by the record, the weighing process and the fact that the prosecutor asked for follow-up on that issue and that request was denied, as well as her reasoning that MJ worked for the Department of Social Services. And the court found that all of those reasons were supported by the record and made that ultimate finding that race was not a substantial motivating factor for why she excused MJ. So even considering those in the first instance, we have to defer to the district court finding because it was in the best position to evaluate the prosecutor's credibility. That's the same reason why this case can't be decided by this court, because that critical information is missing. This court did not have the benefit of seeing the prosecutor testify at the evidentiary hearing. And the Supreme Court... Do you have any cases that you can cite to us for, I think, your position that we would remand this if we were to find there was clear error as opposed to deciding it here in the first instance? I have two cases that are helpful in this point, Your Honor. The first is Snyder, where the Supreme Court said that perhaps the most important evidence at step three is the prosecutor's demeanor while offering its reasons for its strikes and its credibility finding. And again, the district court was the only court to get the benefit to evaluate the prosecutor's demeanor. The second case is this court's holding in Finn, where the court reversed the district court after the district court did not adopt the magistrate judge's findings. And that was because the district court did not have the benefit of seeing the prosecutor testify. So this court said that it was improper for the district court to overrule the credibility findings of the magistrate who had heard that testimony and made that finding. And then what did we do? We sent it back. If this court finds that because it is not explicitly clear that they considered the full quotation in the reference to race, then yes, it would be sent back for the district court to make, along with its other credibility findings, that it had the benefit of hearing by the prosecutor. Have you... Are you... Could I interject a question, please? So, counsel, in other some areas of the law, for example, when we review an agency, the administrative agency decision, there's a presumption of regularity. I don't know if that would apply in the context like this. When the district court says I've considered all the evidence, then should we assume or presume that the district court did consider all the evidence? I think we should presume that, Your Honor, because the district court made a very detailed order. Do you have authority for Judge Gould's question? Oh, I'm sorry if I misunderstood. No, I'm just wondering. You've answered his question. I'm just asking if you have authority for that. Does the presumption of regularity apply? I think the presumption is that we can't assume clear error. And I apologize, I don't have a case to cite, but I don't think we can presume clear error here from the district court's omission of that second half of that quote, especially when the court did quote another portion with a reference to race and then ultimately made the important step three finding, which is that race was not a substantial motivating factor. Are you familiar with our decision in Cook? I am. And what did we do in that case, counsel, when we said we were concerned about the prosecutor's expressed reference to race and we discussed whether that was persuasive or pretextual? How did we handle that there? Which way does that case cut? I think that Cook actually weighs in our favor because I think that where the prosecutor made a reference to race, this court said that there was no other similarly situated juror, no other juror had left that question asking about racial background blank. And so the prosecutor's testimony about why they excused that juror, this court had to defer to the district court's finding as to the prosecutor's credibility. And so I think that the same thing can be said here because there is no other similarly situated juror to MJ. And then also we defer to the district court's finding that credibility findings in light of everything else that it considered that race was not a substantial motivating factor. Is Cook a step two analysis or a step three analysis? I believe it was a step three analysis. I think it's a step two. I think that case talked about what was required for purposes of moving to step three. So even if one of the proffered reasons is not race neutral, sort of the discussion is then, you know, there's a burden to produce race neutral reasons. And it talks about what the government has to do. And if there's even one non-race neutral reason, then you move to step three. And that's possible, Your Honor. And I'm sorry, I may have misunderstood Cook. However, I think that that's always in our favor because here the district court did proceed to step three. And it made that ultimate finding that race was not a substantial motivating factor. And there were other things supporting the court's finding in that way. For instance, the fact that the ultimate impanel jury was composed of three black jurors and one black alternate. So the ultimate jury was 25 percent black, which far exceeded the rate at which potential black jurors were appearing in the Pomona jury pool, which the trial court noted was only 7 percent. Counsel, you're using the phrase a substantial motivating factor. And I think Flowers and Supreme Court authority talks about whether the prosecutor was substantially motivated by race. There's a difference about whether there was a substantial motivating factor, maybe perhaps one that was and one that wasn't. But I think the all in, I'm concerned about the Supreme Court articulating this as an all in. Was the prosecutor substantially motivated by race? That's different than saying, was this race-based reason a substantial motivating factor? Yes. And I think that the district court applied the correct standard here when it found that it was not the substantial motivating factor. And it considered also the fact that the prosecutor, even after making this reference to race in regard to MJ, was then asked and testified that race was not a reason for why she excused any of the four challenged jurors. But the district court, if you agree that the question is, I think the most recent articulation from the Supreme Court is whether the prosecutor was substantially motivated by race. That's sort of all in. So you have some, let's just posit that, that there are some reasons that are race-based and some that are not. The trial court is charged with deciding whether the prosecutor was substantially motivated by race. If that's your view and we have race-based statements from the prosecutor that the district court hasn't grappled with, we keep using that phrase, hasn't grappled with, your argument in favor of affirmance across the board here is troubling because it sounds like that evidence would never be considered. Well, or we can't tell that it was considered. Yes, and I think that it is reasonable to presume that the district court considered everything that it had before it, including this statement about race. Okay, because you're looking at page 16, at 16 of the district court's order, he said, he attributes to the prosecutor, our case was three young men using a firearm in the murder that was the subject of the case, and there were three relatively young African-American males. Correct. So this is the district court talking, attributing this statement to the prosecutor where she calls out the race of the defendants. Correct, yes. So I think that the district court including that portion of the prosecutor's testimony and then going on to find that it found her to be credible and genuine in that the reasons she articulated were her actual reasons and that race was not the substantial motivating factor in why she excused MJ. That's why there is not clear error here, because the district court's findings were supported by the record and it did consider including that quotation by the prosecutor. We take the charge of Batson very, very seriously, and implicit bias is really tough to ferret out, and I'm very mindful of Judge Gould's questions about how many decades that have gone by in this case, but because we are so exquisitely sensitive to this subject, it is concerning that there's a declaration and the testimony, and concerning that although this wasn't argued in the district court, so lest anyone understand that I'm finding fault with the district court, I don't think this argument was presented to him. I find that troubling, and I want to hear what the state has to say about why this doesn't need to be directly addressed by the person who saw the prosecutor's testimony. I understand that concern, Your Honor, and again, I think that if the court were to find that it's ambiguous whether the court considered this portion of the prosecutor's testimony, the remedy would be to remand to the district court. But not for a new evidentiary hearing? No, Your Honor, just to explicitly consider this portion that the court feels is not addressed in the opinion, and then to make its credibility findings, because again, it was the only court to have seen the prosecutor testify. So it would be improper to reverse the district court's credibility findings on a cold record without having seen for this court to do that on a cold record. Well again, credibility finding is a very tough thing to reverse, but it's not even that when we're talking about Batson. People can honestly testify that they think their motives were X, and their motives may have been, again, that's what implicit bias is all about. So it's not even just a credibility determination, but I think I cut you off. Well, I'm confused because I don't see a mechanism to send this back other than, I mean, the question about whether we should remand or decide the ultimate Batson claim ourselves assumes that we're finding clear error. So I fear that what you've been arguing this whole time is this insistence that there was no clear error, and therefore all of the information that the district court needed was both before it and considered, which I think then undercuts your argument that it should be remanded. So I really want you to sort of parse those things out and assume that we find clear error, and then to tell me what would you have us do if we determined that there's, that we do, in fact, reverse on clear error grounds, what should we do, and what's your best authority for that? So I do want to make clear that I don't think that there was clear error here. I understand that. I'm very, very clear on that, and I'm asking you to assume that we believe there was. Yes, Your Honor, if this court were to find clear error, I think that it does need to be, if this court were to find clear error in the sense that it's unclear whether the district court considered that second half of the prosecutor's statement. It's not that we don't know whether he did or not, but he doesn't grapple with it. So it's not, it's not a question of, you know, a technical, make clear that you did. It's that there are explicit race-based statements made by the prosecutor. By not grappling with that, that is the clear error. So now the question is, what happens if that determination were to be made by this court? I think that it would have to be sent back because, again, the district court was the only one to to be able to see the prosecutor testify, and that is the most important evidence at step three, is to determine whether the statements given were pretextual or whether race was the substantial motivating factor, and the district court was the only court to have the benefit of that information. And because of that, this court can't make the finding on its own because it didn't have the benefit of seeing the prosecutor testify. But I do want to address that I think the district court did grapple with it because it did consider everything, the whole totality of the circumstances, including the prosecutor's statement and the other reasons proffered. There were also other reasons proffered borne out by the record, and that also lends support to its credibility finding, that even though there was this reference to race, all of her reasons were supported by the record. Her contemporaneous evidence, which also this court has said is evidence of what was actually going through the prosecutor's mind as she was making her strikes, and so the handwritten notes she made at the time of jury selection, in addition to her testimony and the fact that the district court found her to be, quote, entirely credible, and she testified that she didn't excuse any of these jurors based on race. The district court, I think, did grapple with all of that and all the information it had before it and made the ultimate finding that race was not the substantial motivating factor for why she excused MJ. And I think that is true for all of the four jurors as well as to A.S., H.F., and R.L. Those jurors were also struck for non-based, non-race-based reasons. Their reasons were supported by the prosecutor's reasons were supported by the record and her contemporaneous evidence, and that also lends support to the district court's overall finding that the prosecutor was credible because all of the reasons she offered for all of the four jurors. Let me ask you about this since you're, I know you were short on time, but since we're moving to these, the other jurors, and this actually still relates to Juror J, but on the issue of sort of the part that the district court did focus on or the explanation that the prosecutor, Prosecutor Decker, gave in her declaration, I'm curious to know how you square the juror analysis with respect to Juror Sally D. So this was a juror who also had family members who had been charged with crimes. In fact, I think her son might have been charged with the precise crime that the defendant here was and had family members in jail. So how do you address the discrepancy in striking Juror J and not Juror Sally D who had, essentially, if you strip out the African-American son's comment, these two jurors are exactly the same, and I think arguably Sally D is worse. So Sally D is not similarly situated to MJ, and the prosecutor actually explained why, and the district court found that her reasons were persuasively articulated as to the difference between MJ and SD. And the prosecutor said that the mother-son relationship was different, and she actually drew on her own experience, and she said, I have two sons, and if one of my sons was charged with a violent crime, I would be much more personally involved than if it was some other family member. And for SD, that was her brother, her nephews, and she also had a son that was in the county jail. She had a son that she had visited for a traffic violation, but a traffic violation is not the same as what MJ's son had been charged with and what the defendants were charged with here. And the district court found it is entirely logical for a prosecutor to be more concerned about sympathy towards young defendants in a case involving gun violence if the potential juror's own relatively young child spent time in for gun-related criminal conduct. So that's why SD is not similarly situated to MJ, because the crimes were different, the relationship was different, and the prosecutor articulated both of those things as why she kept SD and did not keep MJ. So I see my time is concluded. Thank you. Thank you, Your Honors. And first, I do want to apologize. I do not have a case at the ready that discusses the balance as to whether with this type of fact pattern we would be happy to brief that to the court, if the court would like that in the form of a 28-J letter. But I would just like to pick up on what I think the last discussion was just referencing, which is that this is also a totality of the circumstances analysis. And so although there is this issue, which we do see that it was not artfully argued at the time that there was a specifically race-based reason given for the strike of MJ, that is not the end of the Batson analysis in this case. The Batson question in this case involves not just juror MJ, but four separate black female jurors who were removed from the veneer. And there is comparative juror analysis that was advanced at the district court that has been discussed in our brief that raises inferences, certainly, of discrimination and that in the context of looking at the strike of MJ also would provide substantial support for the conclusion that her strike also was substantially motivated by race. And I think Your Honor was just referencing recent Supreme Court cases. I think Flowers v. Mississippi also stands for the proposition that when you are doing a Batson analysis, you have to also, in trying to ferret out the step three question, you do look at the totality of the circumstances. So you look at the other evidence that we have before us in determining as to each individual strike as well, because it tells you something more about what is going on in this case. And I think when you look at the totality of the circumstances, my friend on the credibility of the prosecutor several times, there are some things I think that also cut the other way that this court needs to consider. For example, at the evidentiary hearing, the prosecutor stated that she hadn't thought about the fact that this case depended on the testimony of a white woman against her estranged black husband. Now, this was the primary witness in this case. This was the person who made the case for the state. So to think that the prosecutor at the time of jury selection, when very early on in voir dire, she used four out of her first ten peremptories to strike one after the other black females from the jury pool, was not cognizant of what was going on in this case as far as what the state's evidence would be, I think also cuts against the credibility of the prosecutor in this regard. You would have us find that the district court clearly erred by finding the prosecutor credible? I would simply say, Your Honor, there are many bases on which to find that the district court clearly erred, and one of them would also be in failing to look to the totality of the circumstances and really engage with what was going on in this case and what that likely tells us about the reasons behind these strikes. And what it tells us, I believe, Your Honors, is that there was substantial evidence that these strikes were motivated by impermissible group bias. Okay. Judge Gould, do you have any additional questions? No, thank you. All right. What we're going to do is take a ten-minute break, and then we'll come back and hear argument in the other case. All right. Thank you. We'll stand and recess for a moment, please.
judges: GOULD, CHRISTEN, DESAI